# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

THIRD DISTRICT—MAY TERM, 1887.

## EDWARD PRINCE

V.

## THE CITY OF QUINCY.

*Municipal Corporations—Indebtedness—Constitutional Limit—Contract
to Furnish Water—Municipal Torts—*Quantum Meruit—*Fraud—Estoppel
—Former Adjudication.*

1. The constitutional limitation of municipal indebtedness applies to a contract for a term of years relating to ordinary current expenses, payable out of current revenues.

2. A municipal corporation is not liable in tort, when the alleged tort arises from the breach of a contract which is void by prohibition of the Constitution.

3. In the case presented, it is *held:* That monthly installments for water, due the owner of water works, under the terms of a contract for a period of years, constitute a municipal indebtedness; that a failure to pay such installments out of current revenues, the municipality being already indebted beyond the constitutional limit, does not amount to a tort; that a former suit in assumpsit operates as a former adjudication; and that the use of water by the defendant without intending to pay for it was not fraudulent.

[Opinion filed May 25, 1888.]

APPEAL from the Circuit Court of Adams County; the Hon. WILLIAM MARSH, Judge, presiding.

(490)

Prince v. City of Quincy.

Mr. WILLIAM McFADON, for appellant.

The constitutional provision relating to indebtedness does not obliterate, abolish or extinguish any of the powers of a city in relation to current expenses, as the same are conferred by its charter, but its chartered powers in such regards are, notwithstanding said provision, still left in force as there conferred. Valparaiso v. Gardner, 97 Ind. 1; Grant v. Davenport, 36 Iowa, 396; East St. Louis v. E. St. Louis Gas Co., 98 Ill. 415; Railway Co. v. City of Jacksonville, 114 Ill. 567; Laycock v. Baton Rouge, 35 La. Ann. 475; Tax Payers' Assn. v. City of New Orleans, 33 La. Ann. 571; Smith v. Town of Dedham, Mass., 10 N. E. Rep. 783.

Quincy, by its charter, and prior to the passage of the constitutional provision aforesaid, being empowered " to provide the city with water, to erect hydrants and pumps in the street for the convenience of its inhabitants," had the power to do the same thing after and notwithstanding the going into force of said provision.   City of Quincy v. Bull, 106 Ill. 350; Session (Private Laws) 1857, p. 181, Sec. 22; Session Laws 1840, p. 116, Sec. 8.

By a uniform current of decisions in States where a constitutional or statutory limitation restricts the incurring of indebtedness by municipalities beyond a certain point, the indebtedness of a city, if upon a time contract for current expenses, does not arise at the time of making such contract. If the opposite were the rule, the aggregate of all the payments to be made during the entire duration of the contract, would constitute an indebtedness of such city, arising at the moment such contract was made.   The true rule upon the authorities is that the indebtedness under such contract only arises from month to month, as and when the article contracted for is furnished.   Smith v. Dedham, 10 N. E. Rep. 783; East St. Louis v. E. St. Louis Gas Co., 98 Ill. 430; City of Valparaiso v. Gardner, 97 Ind. 1; Grant v. Davenport, 36 Iowa, 396; Weston v. Syracuse, 17 N. Y. 113; Laycock v. City of Baton Rouge, 35 La. An. 475; Reynolds v. Shreveport, 13 La. An. 430; State v. McCauley, 15 Cal. 429; People v. Pacheco, 27 Cal. 175.

Inasmuch as on a time contract for water (it being a current expense of a city), no indebtedness is created only as and when the water is furnished, and even then no indebtedness is created if the revenue of such city be applied in payment of the successive installments due under the contract, it follows that the only effect of the constitutional provision relating to indebtedness above referred to, as applied to a city indebted up to the constitutional limit, is to so change the legal effect of its contracts as to current expenses, as that the same, instead of being payable generally by and against a city as theretofore, become and are payable specifically and specially out of its revenue.    East St. Louis v. East St. Louis Gas Co., 98 Ill. 430.

The decisions of courts upon contracts which have been held payable out of revenue, or a special revenue, become, then, applicable to the case in hand, and from these decisions, it is clear in such cases that any default on the part of municipal authorities in collecting such revenue, or in taking the necessary steps to give such revenue to the parties entitled to the same, or to make the same available to them, is a wrong on the part of the officers, for which the city itself is liable in an action of tort.    Clayburgh v. City of Chicago, 25° Ill. 536; Lansing v. Van Gorder, 24 Mich. 456; Chaffee v. Granger, 6 Mich. 51; 2 Dillon Mun. Corp., Sec. 968; Kearney v. Covington, 1 Metc. (Ky.) 339; McCullough v. The Mayor of Brooklyn, 23 Wend. 460; Western v. The Mayor of Brooklyn, 23 Wend. 334; Shearman & Red. on Neg., Sec. 136.

To show that a tort has been committed in the case at bar, in the manner the city officials have dealt with said appellant, is the object of this subdivision of our brief, and that this is so appears from these considerations:

The charter of the city of Quincy provides that the city council of said city shall have power to appropriate money and provide for the payment of the expenses of the city. Private Session Laws, Illinois, 1857, p. 163, Chap. 4, Sec. 4.

The vesting the power last aforesaid in the city council of Quincy, carried with it the duty on the part of that city council to appropriate money and provide for the payment of the expenses of the city, for the failure to perform which an action

lies in favor of the party aggrieved against the city. Clay-burgh v. Chicago, 25 Ill. 536; City of Cairo v. Campbell, 116 Ill. 309; Seagraves v. City of Alton, 13 Ill. 366; Chicago v. Robbins, 2 Black, 418 ; Bloomington v. Bay, 42 Ill. 507; Lan-sing v. Van Gorder, 24 Mich. 456.

Under said provision of the charter it was not only the duty of such city council to appropriate money, but it was also the duty of that body to audit bills, and to pass any and all ordi-nances and resolutions, and to do any and all acts and things necessary to give appellant his money. Frank v. San Francisco, 21 Cal. 695; The State ex rel. v. Cincinnati, 19 Ohio, 195; City of Cairo v. Campbell, 116 Ill. 309.

Action on the part of Quincy's city council under such power is not legislative or discretionary, but the exercise of such power by such council is imperative in favor of the party entitled to the money for current expenses furnished. City of Cairo v. Campbell, 116 Ill. 309; Supervisors v. U. S., 4 Wall. 447; Galena v. Amy, 5 Wall. 705; Commonwealth v. Pitts-burg, 34 Pa. St. 513; Robinson v. Butts City, 43 Cal. 354; Frank v. Supervisors, 21 Cal. 695; 2 Dill. on Munic. Corp., Sec. 857.

A duty being imposed on Quincy's council by the chartered provision last cited, and that duty being omitted, and by vir-tue of such omission a substantial loss of money resulting to said appellant, we have here all the elements of a tort. Loup v. California S. R. R. Co., 63 Cal. 99; Underhill on Torts, 4.

The constitutional provision relating to indebtedness does not constitute a defense to an action against a city, though indebted to the five per cent. limit, where the action is a tort brought for the negligence of its agents. City of Chicago v. Sexton, 115 Ill. 245; Bloomington v. Perdue, 99 Ill. 329; Bartle v. Des Moines, 38 Iowa 414; Rice v. Des Moines, 40 Iowa, 638.

The contract sued on for water was older and of earlier date than any other contracts relating to any of its current expenses for the respective fiscal years aforesaid. The contract was itself an appropriation of the future revenues of the city which successive councils, when coming into office, were bound to

regard. Syracuse v. Weston, 17 N. Y. 113; Grant v. Davenport, 36 Iowa, 396.

And the city of Quincy having revenue enough to pay the claims arising under the contract in the case at bar, its council could not vote away revenue from the appellant, and appropriate it to contracts of later date, and then claim that the contract by said ordinance created was invalid. Cincinnati v. Cameron, 33 Ohio St. 375.

It has been held, even in matters which are discretionary with city councils, that a wilful omission to act or an omission to act from malicious motives, is an abuse of discretion and therefore a breach of duty, which is actionable. Roberts v. City of Chicago, 26 Ill. 251; Village of Glencoe v. People, 78 Ill. 389; State ex rel. v. Moore, 42 Ohio St. 108.

For the wilful and malicious omissions of duty and acts on the part of its officers alleged in the declaration and admitted by the demurrer, the appellee is clearly liable.

The appellant desires to call especial attention to the ninth count of his declaration. This count shows the taking and use of appellant's water with the intention of not paying for it, and the use of said water under the facts set out in this count, and with the intention of not paying for it, constitutes a gross fraud on appellant. Had the water not been used up, appellant could recover the same in specie. Having been used up, his remedy is in case for the fraud. Dow v. Sanborn, 3 Allen, 182; Fox v. Webster, 46 Mo. 184; Benj. on Sales, § 440, notes and cases cited; Stewart v. Emerson, 52 N. H. 301.

Messrs. GEORGE A. ANDERSON and CARTER & GOVERT, for appellee.

If there had been a tort, has it not been waived by the plaintiff in bringing his action in assumpsit on the contract? The declaration shows that the plaintiff brought suit against the defendant in assumpsit for the same alleged indebtedness prior to the bringing of the present suit. That suit having been carried through the various courts, and finally decided adversely to the plaintiff by the courts of last resort, the plaintiff changes his form of action and begins a new suit.

If the action of the city council in refusing to pay the plaintiff's alleged claims amounted to a wrong or tort, it was in his discretion to have either sued in case or to have waived the tort and sued in assumpsit. State v. Evans, 35 Ill. 455; Gray v. St. John, 35 Ill. 222; Ives v. Hartley, 51 .Ill. 520; Alderson v. Ennor, 45 Ill. 128; Creel v. Kirkham, 47 Ill. 344; DeClercq v. Mungin, 46 Ill. 112; Parker v. Tiffany, 52 Ill. 286.

If plaintiff's theory of the action of the city council in refusing to pay the water bills is correct, he must be held to have waived the wrong in bringing his suit in assumpsit. Kellogg v. Turpie, 2 Ill. App. 55; Brumbach v. Flower, 20 Ill. App. 219.

We deny that the record shows that there was any fault or wrongful neglect on the part of the city council, but we insist that if it did, the corporation can not be held liable as in tort for a mere non-feasance of the city legislature. And this, whether the contract or indebtedness was or was not prohibited. Dillon on Mun. Corp., Secs. 91, 482, 949, 964, 966 and 1048; Baker v. State, 27 Ind. 489; Morris v. People, 3 Den. 381; Wells v. Atlanta, 43 Ga. 67; Gillett v. Lyon, 18 Kan. 410.

Public officers whose offices are created by the act of the Legislature, as members of a city council are not municipal agents or servants. Their neglect is not to be regarded as the neglect of the municipal corporation. And the city is not liable for the non-feasance of its public officers in the performance of their public duties, unless expressly made so by statute. Wheeler v. Cincinnati, 19 Ohio St. 19; S. C., 2 Am. R. 368; Brinkmeyer v. Evansville, 29 Ind. 187; West Col. Med. v. City of Cleveland, 12 Ohio St. 375; Thomas v. City of Richmond, 20 Wall. 349; Dill. Mun. Corp. Secs. 61 and 372; Gibbs v. Beaufort, 20 S. C. 213; S. C., 5 Am. and Eng. Corp. Cas. 428; Black v. City of Columbia, 19 S. C. 412; S. C., Am. and Eng. Corp. Cas. 640; Coleman v. Chester, 14 S. C. 290.

A legislative corporation established as a part of the government of the country, is not liable for a non-feasance by an omission to observe a law of its own in which no penalty is

provided.    Fowler v. City of Alexandria, 3 Pet. (U. S.) 408.

It is not liable for the non-exercise of, or for the manner in which in good faith it exercises, discretionary powers of a public character.    2 Dillon Mun. Corp. 949, 3d Ed., and cases cited; Boone on Corporations, Sec. 300.

In Board of Trustees v. Schroeder, 58 Ill. 353, it was held that a municipal corporation is not liab'e for the illegal and unauthorized acts of its officers in administering an ordinance. Nor is it made liable by the fact that its board of trustees are cognizant of the tortious act, or even participate therein. Larkins v. Saginaw, 11 Mich. 88; Detroit v. Blakely, 21 Mich. 84; S. C., 4 Am. Rep. 457; Mulcairns v. City of Janesville, 29 N. W. Rep. 565, and cases cited and note; 2 Thompson on Neg., 675, 731, 818.

In Detroit v. Blakely, 21 Mich. 84, Judge Cooley in his opinion, dissenting in some other points from the majority of the court, said: "I fully concur that a municipal corporation is not liable to an individual damnified by the exercise or failure to exercise a legislative authority."

PLEASANTS, J.    This was an action on the case brought by the appellant against appellee.    The declaration contained eleven counts.    A demurrer, general and special, to the whole declaration and to each count thereof was sustained, and the plaintiff abiding, a judgment of *nil capiat* and for costs was rendered against him, from which he took this appeal.    The question is upon the sufficiency of this declaration.

In the first count it is alleged that the defendant was incorporated by special act which empowered it, among other things, " to appropriate money and provide for the payment of the debt and expenses of the city;" that in August, 1873, it passed an ordinance (set out *in haec verba*) which was duly accepted by plaintiff and so became a contract between them, whereby plaintiff was to construct, maintain and keep in operation within the corporate limits of the city a general system of water works, to be extended and enlarged from time to time as therein prescribed, and the defendant was to pay him in monthly installments from the time water should be turned

on, the sum of $2,600 per annum, and also in like manner $200 per annum for each of the first one hundred hydrants, which contract was by its terms to run for a period of thirty years; that the plaintiff fully performed all the things by said contract required of him and within the time thereby limited for that purpose, and at all times during the fiscal year next mentioned had and furnished water through seventy-seven hydrants, on each of which water had been previously turned, and all of which had been located under and pursuant to the provisions of said contract; that the city had a fiscal year of its own, commencing March 31, 1880, and an income and revenue of its own for said year; that, at the commencement of said year and at all times during the same, it was indebted upon its valid bonds theretofore issued and then outstanding and unpaid, to the amount of more than $1,700,000, which greatly exceed five per cent. on the value of all the taxable property within its limits, as ascertained by the last assessment for State and county taxes made before the commencement of said year, or by any assessment therefor made during said year; that by reason thereof plaintiff became and was entitled to payment out of the revenue of said year, and the city council ought to have provided out of the same for the payment to him of the contract rate per hydrant specified in said ordinance; that, although the city during said fiscal year received and used the water so furnished through said seventy-seven hydrants, and its income and revenue during said year was ample and sufficient for such payment in full, nevertheless the city council wilfully neglected and refused to appropriate the revenue of said year to, or provide for the payment of, the amounts so due to the plaintiff, but on the contrary permitted said revenue to be dissipated, scattered and diverted from the payment thereof; by means whereof the revenue of said fiscal year was lost to the plaintiff, and the amount due him for water furnished to the defendant during said year remains unrecovered and unpaid.

In this count the duty of the council is alleged to have been to provide for the payment to plaintiff, out of the revenues of the year, of the amount of the contract rate for the water fur-

nished during the year.   This duty is predicated upon (1) the chartered power of the council to appropriate money and provide for the payment of the debts and expenses of the city; (2) its express contract with plaintiff, performed on his part; (3) its indebtedness, previously and then existing, to the full limit of its constitutional power to contract indebtedness, and (4) its possession of revenue for that year sufficient for such payment.   The breach complained of is its refusal so to provide for payment to the plaintiff and the appropriation of said revenue to other uses; and the damage or injury to the plaintiff alleged, is the non-payment of his claim.

The other counts, excepting the ninth and eleventh, are in principle and general form the same as the first, the difference being, that some relate to the claims for water furnished during the two following years, respectively; some aver that an actual though insufficient appropriation was made for the claim for the year therein mentioned; some allege the contract as one implied from the receipt and use of the water to pay the plaintiff *quantum meruit;* some state the duty was to pay for current expenses *pro rata,* and some charge the refusal to pay as designed and malicious.

It is not proposed to notice all of the many points discussed and authorities cited by counsel, but only two or three which in the light of our own State decisions are deemed decisive of the question here presented.

At first blush it would seem that by each of these counts it is sought to charge the city in tort for the simple refusal of its council to pay an indebtedness contracted directly in the face of an express constitutional prohibition, and so, to recover as damages the precise amount of that indebtedness, with interest from the time when it became due by the terms of the contract.   But counsel, as was to be expected, disclaim a position so clearly untenable.   Yet this apparent effect of all the facts alleged is obviated only, if at all, by the introduction into the pleading itself, by inference and as argument, of certain propositions of law touching the effect of the constitutional prohibition upon the contract and claim in question, and the character of the fund called "current revenue," which are admitted to be essential to the sufficiency of these counts.

Prince v. City of Quincy.

Those propositions are that the legal effect of the prohibition upon plaintiff's claim was to make it, not non-payable, but payable only out of current revenue, and that current revenue was a specific fund for its payment; and they raise the questions we purpose, mainly, to consider.

The reasoning in support of them, and which develops the theory of appellant's case more fully, is this: (1) Conceding that appellee had already reached the limit of indebtedness prescribed by Sec. 12 of Art. IX of the Constitution, the prohibition therein contained did not abrogate its charter powers "to provide the city with water, and to erect hydrants and pumps in the streets for the convenience of its inhabitants," and "to appropriate money and provide for the payment of the  *  *  *  expenses of the city," or any others, but only forbade that in the exercise of these powers it should contract any further indebtedness; (2) that a city so indebted may nevertheless incur current expenses for police service, lighting the streets, water supply and the like, provided only it does not thereby add to its indebtedness; (3) that to contract for such services, if it can pay for them out of current revenue, is not necessarily to add to its existing indebtedness; (4) that under continuing contracts therefor, providing for periodical payments, no indebtedness can arise until the service is rendered up to a period for payment, and if payment is then made none has been thereby added to that already existing, within the meaning of the prohibition; (5) that, being forbidden to contract indebtedness for them directly, or to borrow means of payment, the only resource is the current revenue; (6) that being the only available means of payment, this current revenue is a specific fund for that purpose; (7) that so to apply it is therefore a specific ministerial duty of the council, made all the more clear and binding by its limitation to this means; (8) and that the refusal, neglect or failure to perform such a duty is a municipal tort.

Of this series of propositions we hold the third, fourth, fifth and sixth, which embrace the two previously stated, to be unsound; and if they are so, the seventh and eighth are inapplicable.

The constitutional provision referred to is that "no \* \* \* municipal corporation shall be allowed to become indebted, in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five *per centum* on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness."

This language leaves nothing for construction except to ascertain what it is "to become indebted" in the sense here intended; for none that could be employed would be more apt to show that upon all such contract liabilities as are within its purview this provision operates with only one effect, which is to disallow them. It is too plain for argument that it does not classify them as non-payable and payable out of special funds, or otherwise, nor change any from being a charge against the city generally into a charge against the current revenue only, but makes them all alike absolutely non-payable and void. If, then, the contention of counsel that it so changed the contract and claim here in question is an admission that they were within its purview, it admits away their case ; and if the fact that without that provision it would have been an indebtedness against the city generally shows it to be so, then that fact, independently of any admission, must also be fatal. It either was or was not within the purview of the inhibition. If not, it was in no way affected by it ; if it was, the refusal to pay it, however caused or manifested, could not be a tort.

We apprehend the real position of counsel to be, that because this claim was properly payable out of current revenues, it was not within the inhibition, which is therefore invoked only as further certifying and enhancing the alleged duty of the council to pay it accordingly.

But it can not be that the duty referred to was that of anticipating the revenue and avoiding liability, by assigning the amount required, without recourse, out of a tax already levied for the purpose, as indicated in the Edwards case (84 Ill. 633). It is not averred that any such course was ever requested or suggested by appellant, nor does it appear that

Prince v. City of Quincy.

its necessity or propriety was apprehended by either party. Another and different one was expressly provided, with his full understanding and assent. In reference to both the $2,600 per annum and the additional sum per hydrant the language of the ordinance is the same: "Said city shall pay said Prince in monthly installments, from the time water is turned on," etc. (Sections four and seven.) Thus the contract was not to provide for payment, but to pay; not out of a particular fund, but absolutely; and the obligation for the delivery of the money was not cast upon its officers, but assumed by the corporation. Failure in duty respecting this claim must therefore consist in failure to pay it according to the contract. So we understand the wrong really charged to be, not in procuring the contract or its performance without securing or providing for payment in a particular way, but in refusing to pay.

By its charter, the amount of taxes the city could levy in any one year for all purposes, except for interest on its registered bonds, was limited to $1.03 on the $100 of the assessed valuation of all the real and personal property therein. Binkert v. Jansen, 94 Ill. 283. The amount of such valuation, or of the taxes levied, or of the current revenue in any year, or how it was applied, or that one dollar was improperly applied, except as it was thereby diverted from the payment of appellant's water bills, is nowhere averred. Therefore the dissipation and scattering of the revenue, as alleged, involved no wrong unless the payment of appellant was a duty; and so the charge is reduced to a refusal to pay him, which, in this case, would be a mere breach of the contract in that behalf, unless such payment was a duty specifically imposed by something besides the contract itself, since no other element of a tort is alleged or discovered in the fact or cause or manner of the refusal; and hence the importance attached to the fact of the city's existing indebtedness, and the consequent effect, as supposed, of the constitutional inhibition.

Thus the position of appellant seems to be that the contract being for current supplies to be furnished continuously for a specified sum per annum, payable monthly, within the

amount of current revenue, did not create such a liability on the part of the city as was forbidden, and if the periodical payments provided for had been made when due by its terms no indebtedness within the meaning of the Constitution would have arisen; and that his claim became an indebtedness, and therefore non-payable as such, by the failure to pay it when due, which was wholly the fault of the city council, and is the tort here complained of.

There is no doubt that the effect of the inhibition was to require the city, indebted as it was, to carry on its corporate operations, while so indebted, upon the cash or pay-as-you-go plan, and not upon credit to any extent or for any purpose; and the question is whether the course contemplated by this contract was in accordance with that plan.

It clearly did not contemplate any payment in advance, but that a claim against the city would be constantly accruing, payable from month to month, for water previously furnished —" from the time water is turned on"—and that, having been furnished, the obligation to make these payments at the times specified would be absolute and wholly irrespective of its ability or actual possession, at such times, of cash wherewith to make them. Thus some credit was contracted, and not upon the faith of money in hand when performance by appellant was begun, but of money expected to be in hand when it should be completed. And under the charter limitation of the amount of annual taxes to be levied and the known method of their collection, some risk of its unavoidable extension beyond the fiscal year was necessarily incurred.

Appellant's claim arose directly upon this contract, as executed *pro tanto*. It was for a specified sum of money thereby agreed to be paid for certain services to be rendered, which were rendered. Had there been no limit to the amount for which the city could become indebted, he could have recovered it upon a general judgment (East St. Louis v. E. St. L. G. L. & C. Co., 98 Ill. 415), and then have had a *mandamus* for the levy and collection of a tax to pay it. City of Cairo v. Campbell, 116 Ill. 365. In other words, it would have been a proper debt against the city—a contract liability which

had become absolute for a sum certain in money. Nor is it
perceived how it could have been any the less a debt against
the city if it had been made payable out of a sufficient current
revenue or any specific fund, or if the city had been all the
time possessed of money enough to pay it and all other cur-
rent expenses, or if it had been actually paid when due. Such
payment would have extinguished the indebtedness, but could
not have.anticipated, prevented or avoided it. That accrued
from day to day as the water was furnished (E. St. L. case,
*supra*, p. 430), though it was not payable until the end
of the month; for there was no default on the part of
appellant nor any failure of any contingency on which his
right to the money, under the contract, if it had been valid,
depended.

Then, if the indebtedness so arising was forbidden, the con-
tract upon which it arose—which expressly contemplated and
provided for it, though in itself executory and creating only a
contingent liability, was also forbidden. Prohibition of the
end is prohibition of the direct, designed and appropriate
means. Being an attempt by the city to put it in the power
of appellant and induce him to acquire an absolute indebted-
ness against itself, it was, so far as executed, as clearly against
the policy and provision of the Constitution as the creation of
a present debt. If it had not been executed, nor any attempt
been made to enforce it or to recover for a breach of it, and
so far as it remains unexecuted, of course no such question
could arise, there would be nothing to which the inhibition
could apply. East St. Louis case, *supra*.

In the City of Springfield v. Edwards, 84 Ill. 632, the court
construing this provision, say it is "against becoming indebted,
that is, voluntarily incurring a legal liability to pay, in any
manner or for any purpose, when a given amount of in ebted-
ness has previously been incurred. * * * A debt, payable
in the future is, obviously, no less a debt than if payable pres-
ently; and a debt payable upon a contingency, as upon the
happening of some event, such as the rendering of service or
the delivery of property, etc., is some kind of a debt, and
therefore within the prohibition. If a contract or undertak-

ing contemplates, in any contingency, a liability to pay, when the contingency occurs the liability is absolute, the debt exists, and it differs from a present, unqualified promise to pay, only in the manner by which the indebtedness was incurred. And, since the purpose of the debt is expressly excluded from consideration, it can make no difference whether the debt be for necessary current expenses, or for something else." These general propositions would seem to cover all the material points here involved, but the court went further and specifically held it unlawful for a city so indebted to incur a liability for current expenses or anything else, even though it should at the same time (as some of the counts allege it did here) make a final appropriation, within the limits of the revenue accruing, to meet it; that to avail itself of current but uncollected revenue for such purpose it must go further and assign the amount out of a tax actually levied, and without recourse, in such manner as to "leave upon the city no future obligation, either absolute or contingent, whereby its debt might be increased."

The authorities to the contrary here relied on, from Iowa, California, Ohio and Louisiana, were there considered and expressly held to be overborne by the plain, broad terms of our Constitution. We can not avoid the conclusion from this decision, that the contract here in question was void, and that the claim of appellant, whether upon the contract or *quantum meruit*, was not legally payable out of current revenue or otherwise.

In Law v. The People, 87 Ill. 385, that case was approved and the propositions above quoted were reaffirmed, the court dec'aring the inhibition " was intended to embrace indebtedness of every description, nature and kind, and in every sense of the term, whatever the character or form by which it was evidenced, when made or issued after the limit should be reached." This leaves no possible ground for the supposed distinction between an indebtedness for current expenses and on other accounts, or between one payable out of a specific fund and one chargeable against the city generally. See also Fuller v. City of Chicago, 89 Ill. 282; Fuller v. Heath, 89 Ill.

296; Howell v. City of Peoria, 90 Ill. 104; City of Litch-field v. Ballou, 104 U. S. 190.

But still more directly, the questions upon which the right to maintain this action depends, seem to us to be *res adjudicata.* Prince v. The City of Quincy, 105 Ill. 138, was a suit in assumpsit between these same parties, upon the contract and for the claim here under consideration. The defense pleaded was, in substance, that at the time of making the contract sued on the city was, and ever since had continued to be, otherwise indebted in an amount exceeding the constitutional limit; the plaintiff replied that the several sums of money sought to be recovered "pertained to the ordinary expenses of the defend-ant in the administration of the affairs and government of the city, and that, at the time of the making of said contract, the said several sums of money so provided to be paid monthly by said defendant to said plaintiff, together with other ordi-nary expenses of the government of the said defendant, were within the limits of the current revenues of said defendant;" and the case was disposed of on demurrer to this replication.

It was there contended on behalf of appellant that the term " indebtedness" did not apply to contracts relating to the ordi-nary current expenses of a city, payable out of the current revenues, and the Iowa and California cases were cited; but the court held that "to so construe the Constitution would be to add a provision, in the nature of an exception, which the framers of that instrument did not see proper to insert."

The plea was therefore held good and the replication no sufficient answer to it; the two preceding cases were approved and the construction therein given was declared to be the result of the "deliberate and mature consideration" of the court. There, it was admitted by the pleading that the par-ties made this contract; that the plaintiff performed it on his part; that the water supplied was one of the ordinary current expenses of the city; that the price agreed on as claimed and the other current expenses were within the amount of current revenue, and that the city refused to pay him; and yet he could not recover, because by reason of its existing indebt-edness the contract sued on and the claim so arisen thereon

were prohibited by the supreme law of the State, and there-
fore void. This case and another like it, reported in the
same volume at page 215, distinctly hold that the identical
claim here in question was a debt added to that already exist-
ing against the city, in excess of the limit prescribed, and
directly within the inhibition.

It must follow that the refusal to pay it when due by the
terms of the contract, or at any time afterward, whether from
inability in consequence of the diversion of the revenues to
other uses to its exclusion, or other causes, or from wilfulness,
could not be a tort. Its payment at that time, out of current
revenues or any other fund, or in any way whatsoever, instead
of being a duty enhanced or imposed by any law, contract,
fact or condition, was absolutely forbidden and would have
been unlawful. There being no duty to pay, the refusal could
make no case for *mandamus* or any other proceeding at the
suit of appellant; and the case of Clayburgh v. City of Chi-
cago, 25 Ill. 526, and others cited to like effect, are not in
point.

But it is said that under the form of contract here presented,
there could be no indebtedness until the period for payment
arrived, and (if we understand counsel) that had payment been
then made, none would ever have arisen, within the meaning
of the inhibition. The case of East St. Louis v. E. St. L. G. L.
& C. Co., 98 Ill. 430, is cited as if it modified the decisions above
referred to on this point. There it was for the supply of gas-
light for a long term of years, at a stipulated price per lamp
per year, payable in monthly installments; and, while the court
held that the price for the whole term was not to be con-
sidered an indebtedness incurred on the making of the contract,
within the meaning of the Constitution, we understand it to
have held that the installments, as they became due, would be,
even if they were paid at the time. Its language is: "Had
the contract been performed in compliance with its terms
* * * there would have arisen no indebtedness on the
part of the city for more than one month's gas supply."
(Counsel will observe that from the quotation in their brief,
at bottom of page 16, two important words are omitted—

doubtless through inadvertence.) This, we apprehend, is strictly in harmony with that herein above quoted from the Edwards case, and in Prince v. City of Quincy, 105 Ill. 143. We have the direct authority of the court itself for saying it does not modify those referred to. A recovery was allowed because the amount accrued and claimed did not increase the city's debt beyond the limit prescribed.

The argument seems also to be pervaded by a somewhat vague assumption of a distinction between payment and providing for payment, as a basis for the contention that, by virtue of the charter power to provide for the payment of the expenses of the city, independently of the contract, or under the contract as claimed to be changed by the inhibition, a duty was devolved upon the council in respect to appellant's claim to take whatever action was necessary to satisfy it when it should become due. That would include the appropriation of money, the levying of a special tax, the auditing of bills, the passage of ordinances and resolutions, the issuing of warrants against the tax levied, without recourse, and any and all other things required by law, to be done before it became due by the terms of the contract, in order to give him the money contemplated by the contract, or that he ought to have. The claim is that the omission of any such act, resulting in a substantial loss to appellant, constitutes a tort; and it is urged as being entirely consistent with the admission or fact that the claim did become such an indebtedness as was prohibited and therefore unrecoverable as such.

It is true that notwithstanding its indebtedness and the inhibition, the city continued to have authority to provide a water-supply, and that it remained under obligation to pay its current expenses consistently with the Constitution. If, however, upon its contracting for proper supplies or services without any express provision as to the mode of payment, the law would imply a duty to take all needful steps to effect it, as intimated in Law v. The People, 87 Ill. 400, and if it might so fail to perform as to be guilty of a tort, that, as we have attempted to show, is not the case presented by this declaration; and if it were, it must surely be that this duty could be made unavailable in this form of action by the consent

of the party to whom it would otherwise be owed.    How can appellant charge that the city tortiously omitted to assign enough of the uncollected revenue to pay him, in such time and manner as to avoid all liability on account of the water supplied, since he expressly agreed to give and did give it credit therefor and looked to it for payment when and after it should become due according to the agreement?    This agreement can not be ignored.    It is alleged and set forth in each of these counts.    It fully shows all the obligation he asked or the city assumed in that behalf.    Its performance would have accomplished the same object, but in quite a different manner.    His stipulation for, and reliance upon, its performance, were therefore necessarily a consent to the non-performance of the other, which for that reason could be no wrong to him.

For it is not pretended that such consent was obtained by the misrepresentation or concealment of any fact, or other fraud on the part of the council.    The truth evidently is that both he and the board that passed the ordinance supposed the inhibition (if it was in their contemplation at all) would not affect this contract; that the agreement to pay in monthly installments, provided they could be paid as they became due out of current revenue, would not operate to increase the corporate indebtedness; that if each board should pay the bills of its term as they became due out of current revenues, or so applied them that, at its close, no indebtedness for the current expenses thereof would be left unsettled and open against the city, there would be no infringement of it.    Of the plausibility or reasonableness of this view there is no need to say more than that our Supreme Court, differing, perhaps, from some others as to like cases, pronounced against it.    Being entertained by these parties at the time, however, they innocently provided for and created this monthly debt, and, so long as it was held, the council continued to pay it.

A later board, coming to doubt its authority, on that ground refused to do so any longer.    Still appellant did not shut off the water, nor propose a new arrangement for its supply, nor go on under any implied promise to pay him *quantum meruit.* On the contrary, he insisted on the validity of the ordinance

and brought suit upon it; althoug, has he alleges in the eleventh count, on the invitation of the council, and upon the promise that, if it should be decided against him, the city would pay him for water furnished in the meantime a reasonable price; which would seem to have been an attempt to create another contin_gent liability, quite as obnoxious to the Constitution as the one the council had just repudiated and the Supreme Court after-ward condemned.

We think this contract for credit, voluntarily made, without fraud on the part of the council, or ignorance of any material fact on the part of appellant, estops him to charge that the failure to pay or make provision for payment, otherwise than as so agreed, was a wrong.   The rule embodied in the maxim, *volenti non fit injuria*, is, " that no one can maintain an action for a wrong where he has consented or contributed to the act which occasions his loss."   Broom's Leg. Max. (2d Ed.) 201. And the estopping fact, appearing in the declaration, may be taken advantage of on demurrer.

The ninth count, setting out the contract and averring its performance by plaintiff and payment therefor by defendant for some years, then alleges that, although defendant after-ward disowned it and notified plaintiff that it would no longer be bound thereby, nevertheless it continued to use the water, without intending to pay but intending not to pay for it. This is likened to the fraud of obtaining personal property under pretense of purchasing, but with the intention not to pay.   We think there is a wide difference.   Deceit, which is the essence of fraud, is the chief characteristic of that case, but is not even charged in this.   These works were established and in actual operation, supplying the city and its inhabitants, under an ordinance which may have been valid as to all or many other of its provisions, though void as to that relating to payment by the corporation.   City of Quincy v. Bull, 106 Ill. 348, 352.   Section 17 provides that "said Prince shall have the right to make all needful rules and regulations for the government of said works in all its branches and departments, and no person, except the city council or said Prince, or their properly authorized agents, shall have the right to open or interfere in any way with any fire hydrant in said city, and

said city shall have at all times the right to use water from said fire hydrants for the following purposes, and no other, viz., for the extinguishment of fires, for the use, exercise and practice of fire engines, for filling fire cisterns and other legitimate and proper fire purposes." Under this provision, duty to persons and property within its limits required the city to use the water for these purposes, notwithstanding its intention not to pay for it according to the terms of the ordinance. It is not claimed that it used it for any other, nor that it "disowned" any other provision of the ordinance than that which was "disallowed" by the Constitution. Duty also required it to disown that, and for so doing it should not be subject to any penalty, forfeiture or restriction of right under other and valid provisions, nor to any unfavorable presumptions or odium that should attach to a wilful repudiator. The giving of the notice mentioned was, therefore, an act of frankness and justice to appellant, and not at all indicative of fraud.

For aught alleged in this count it would have agreed to any lawful arrangement, if any had been proposed, for the satisfaction of his claim. The averment of its intention not to pay seems to be an inference from the notice, and in connection with such notice, and disownment of the contract, as stated, is to be limited to an intention not to pay under that contract. So, also, for aught that appears, if he had merely acquiesced in the view taken by appellee of that provision, it would have accepted the implications referred to in Law v. The People, above mentioned. But in any case the count is defective in not averring that any deceit was practiced by appellee, or that appellant was, in fact, ignorant of any intention it entertained; that is, it does not expressly charge fraud, and the fact that the city continued to use the water after notice given, and with intention not to pay for it under the circumstances stated, does not necessarily imply or import fraud.

We have already observed that the seventh count avers no more than the breach of another agreement that was also inhibited by the Constitution, and not a tort.

Perceiving no error in the record, the judgment of the Circuit Court is affirmed.            *Judgment affirmed.*